The next case on the calendar is Cohen v. Schroeder. May it please the Court, Brian Fisher, Jenner and Block, LLP. We're counsel for the plaintiff appellant, Brian Cohen. I'm joined here by my colleague on the brief, Gretchen Sturtz. For five years, Mr. Cohen was forced to defend himself against Mr. Schroeder's baseless litigation. In the process, he incurred hundreds of thousands of dollars in legal fees, fending off Mr. Schroeder's claims. Claims that were contrived to convince a court that a popular website, Pinterest.com, valued conservatively at some $10 billion was his idea. Now, subsequent to the briefing of this appeal, the New York State Supreme Court Commercial Division awarded Mr. Cohen summary judgment in full against all of Mr. Schroeder's claims. In so doing, the Court found Mr. Schroeder's claims a sham. As just one example, the Court found that Mr. Schroeder, and this is a quotation, attempted in hindsight to retroactively tailor his alleged trade secrets to what was embodied in Pinterest. In other words, Mr. Schroeder tried to fabricate the suit. There's no question that you won the suit. The question is whether the district court was correct in saying that we don't pierce for corporate bail. Now, you earlier in your brief say that the reason that Mr. Schroeder reinvigorated this company was because he lacked standing and had to have a company in order to have standing. But if that is so, that's inconsistent with your argument about there was no company and it's all the same thing. I mean, I think for some issues, you're saying the company is there. For other issues, you say, I don't want to treat the company as being there. And I'm not quite sure which of these you mean. Now, of course you want to get through the bail so you can get at his assets because the company had no assets for him to commingle, which is one of the issues on piercing the bail. I understand why you're doing it. But I think if he is wrong in the merits on the issue of whether there was a company or not, I think you're playing both ends against the middle. Judge Calabresi, if I may explain, of course, on the summary judgment appeal, we believe there's sufficient evidence for a jury to agree with our contention that Mr. Schroeder attempted to extract for himself the best of both worlds. When he filed his initial complaint as Theodore Schroeder and no one or nothing else, he claimed for himself all intellectual property at issue. The Pinterest defendant and my client, Mr. Cohen, in writing the court and questioning whether Mr. Schroeder had standing. You immediately brought in the company, which led to the suit being dismissed because of lack of diversity. And that's where the whole thing began, including these great expenses that you incurred. It's the manner in which Mr. Schroeder decided to step into the shoes of this defunct company, reincarnate it, make false filings with the state of Delaware in the process of doing so, and claim for himself in a naked raid on what could be said to be the company's only asset, this lawsuit, said any intellectual property at issue is mine and mine alone. What's the element of injustice or unfairness here in the use of the corporate form vis-a-vis your client? Because as my colleague says, you caused it to happen in some sense by making the standing argument in the district court. Your client knew at the time that Scoop had no assets. You've won the litigation. I don't see how the corporate form was misused. Your client wasn't deceived in any way that I could see. So this doesn't seem like the usual case for Vail-Pearson. Sure. And I want to answer that court question about unfairness and injustice, but I do want to, if I might quibble just a slight bit, Mr. Schroeder caused this, not Mr. Cohen. It's Mr. Schroeder who decided to extract for himself the best of both worlds by fending off the standing challenge, bringing SMA into the lawsuit, but going out of his way in the process of saying that any and all IP involved here is mine. But on unfairness and injustice, there's a deep asymmetry, a deep imbalance here. Mr. Schroeder in 2013, 2014 decided to take for himself the benefit of essentially clothing himself in SMA, being SMA, but has never accepted, never assumed the burden. At the end, Mr. Cohen, because he's left holding what is a valueless judgment against SMA, the company itself. The question here, again, on this appeal of a summary judgment decision is whether there's evidence sufficient for a jury to agree with our position that there is an aroma of unfairness and injustice here, that the individual who did all of this doesn't have to answer for the burden when he went out of his way to take for himself the benefit. The injustice has to do with the use of a corporate form in order to steal. Most of your arguments go to the misbehavior of Mr. Schroeder saying that he owns something that your client actually owns. On that, every court has agreed with you that Schroeder doesn't own these and may have behaved very badly with respect to that, but that doesn't go to the injustice issue that New York focuses on for piercing corporate veil. That's a different kind of injustice. Sure, and it's our submission, respectfully, that these terms, unfairness, injustice, they're entirely fact-intensive, fact-saturated, subjective even. At one point in time, the motion to dismiss agreed that facts had been pled that said that there was an injustice or unfairness visited on Mr. Cohen by Mr. Schroeder simultaneously taking for him. When you say injustice of that sort on a 12b-6, we assume that you can bring in some facts if they are not utterly implausible. That still remains even after the Supreme Court has made that. Of course, the district court said, you may be able to show us something. Then afterwards, it said, you haven't shown us and gave summary judgment. There is a difference still between 12b-6 and summary judgment. Of course, Your Honor. An infirmity of the district court's opinion here is the very allegation which enabled the court to say that a claim had been stated was fulfilled with evidence, meaning that it was substantiated as opposed to negated by the record. I see that my time is expiring. I'll yield to my colleague here. Good morning, Your Honor. Sidney Liebesman from Montgomery, McCracken, Walker, and Rhodes on behalf of the appellee. The rare exception permitted under extraordinary circumstances applied with reluctance, extraordinary relief, and the exceptional case. This case comes nowhere near those terms. Those are terms used by this court and courts in Delaware to describe when the piercing of the corporate veil is appropriate. Stripped of my friend on the other side's hyperbole, in the case below in the New York State Supreme Court, Justice Sherwood granted summary judgment. That is on appeal. At no time did the court below say that the case was a sham. To the contrary, Mr. Cohen, the appellant, stole the ideas from the appellant. I just have a very silly question. You cited our court and you cited Delaware, but the applicable law with respect to piercing is that of New York, is it not? It's Delaware, Your Honor. It's Delaware. Scoop Media Associates was a Delaware corporation. The question of piercing is Delaware law. Not that I think there's any difference, but just to be clear. That's correct. There is no material difference between Delaware and New York, but it is Delaware law that applies. That case is on appeal. We are confident that the decision was made on appeal. We are confident that the decision will be reversed, just like the appellate division expanded claims that had been dismissed on a motion to dismiss that he had filed in that case. That case is nowhere near completed. Sham was not a word that was used, but what word did Judge Sullivan use in this case? Specious. Judge Sullivan called the appellant's arguments with respect to whether there was a single economic entity, specious, and the arguments are specious. And we believe that... The issue is for us. I don't really care. I mean, you parties have been arguing about this and insulting each other back and forth. I don't mean you, the lawyers, but your clients with what would be amusing if it were not sad, regularity. The question is, when you have a company that has never had any assets and that doesn't do anything that is formal, as is often the case with small companies of that sort, is that enough? Because there are some uses by the company, by the shareholder, to pierce the corporate veil, or is it not? And we've been focusing on whether there's been commingling of assets when there were no assets, and on whether there's been injustice, because that's what the district court went on in saying that despite the informality and the utter informality and so on, the veil shouldn't be pierced. So why don't you focus on that for a moment? Sure. Well, Your Honor, first of all, Scoop Media did have an asset. It's an asset that counsel stated today was worth about $10 billion. It's more like $12 billion. But whatever it was at the time, the intellectual property that Scoop Media had as a result of Mr. Schrader's own development of the ideas, he's the one that wrote the code. So as Judge Sullivan found, he, the appellee, had rights to that intellectual property. He's the one that spent undeniably thousands of hours working to develop the idea, and he's the only one that did the technological work. But it was all done under the guise of Scoop Media. None of that was ever formalized. But as Judge Sullivan found, the intellectual property was an asset of Scoop Media. What Judge Sullivan said was, well, you have the appellant arguing that there was a commingling of that asset. And that, we believe, as Judge Sullivan found, is specious. They both have rights to that intellectual property. The appellee, Mr. Schrader, developed the technology for it. It was done under the umbrella of Scoop Media. They both have rights. Who owns it? It's not clear, but they had the right to use it. Do the other shareholders have rights to it as well? Absolutely. And that's part of where Judge Sullivan found that the arguments were specious. The appellee, Mr. Schrader, did not do this on his own. After Mr. Cohen, the appellant, raised the issue of standing in the Southern District of New York, saying that it could not be Mr. Schrader alone. If it's anything, it's a corporate asset. Mr. Schrader, who had already been in communications with one of the other three, so Schrader and Mr. Stroi make up two of the three, they had been communicating all along, even before the first complaint was filed. Let me understand. In the first suit, Schrader says, this is mine. But Mr. Cohen says, no, it's not yours. It belongs to the corporation. That brings in the corporation and the other shareholders. And then the suit is, of course, dismissed for lack of diversity. But there was a point at which Mr. Schrader claimed this was all his. I think there's no dispute that Mr. Schrader has rights to the intellectual property. Whether it's as an owner, as a user, or the one who established it, that's not clear. The fact that he claimed that this asset was all his doesn't say that the corporation should be pierced. It's a separate question. It's related to it, but it is a separate question. Absolutely. And at the time, he was and is the president of Scoop Media. He has the inherent right to bring that suit. And under the bylaws, so there was some corporate formality. Scoop Media had a certificate of incorporation. They had bylaws. They had their own corporate counsel. But isn't it also the case that you indicated that he didn't do this alone? But the record before us suggests that when he initially brought in SMA, he did do it alone. And in fact, he apparently submitted documents that had misinformation. Isn't that the case? No, Your Honor. When he brought, when Mr. Schrader brought that second case and added the corporate entity. No, when he revived the corporate entity, when he went back to Delaware and revived it and filed tax forms, etc. He provided information in those forms that were not accurate. Isn't that right? I, I, well, we have to remember that when the company, when the party split their. Answer the question. Well. Specific question. Mr. Schrader filed that as the president of Scoop Media. It just wasn't clear because no one had ever resigned. Mr. Cohen was a Columbia educated lawyer. Yeah. He was a law student. Yeah. At the time. That's a point that the other side likes to make at the time. These are law students. The answer is yes. When he filed that in Delaware, he filed some things which were not accurate. But I mean, yeah. Why get away from something that is right there on the record? Again, that doesn't determine this case. But you should answer that directly. Because at the time, Your Honor, Mr. Schrader, in good faith, it wasn't, no one had resigned. It wasn't clear who was still in, who was a shareholder, who was an officer, a director. So, it was not accurate. Let me ask you this question. Whatever wrongdoing there may have been with respect to reviving the company all occurred after the two lawsuits that had been filed. And not, there appears to be no indication or no allegation that Mr. Schrader engaged in wrongdoing with respect to the company during the time that all the parties were working together in 2007-2008. Does that figure into that, that timing figure into the analysis for Bill Pierson? I believe it does. You know, the company had been operating . . . Whatever the reasons for reviving the company, at the time of the suit, as to which Mr. . . . your opposing counsel is seeking damages for, the company was there and had been revived. And it may be that it had been out of existence, but at that time, it was there with these other shareholders in it. And the revival, Your Honors, it's a mere formality, too. I mean, the company existed. It's whether it had paid its . . . the fees to the State of Delaware, but that's a mere formality. It doesn't affect the entity itself, whether it existed or not. It existed. They tried to liquidate it and they couldn't liquidate it. Mr. Cohen refused to sign a liquidation agreement. So, the company remained in existence. Thank you. Thank you, Your Honors. A few . . . excuse me, a few brief points of rebuttal. The timing question, I think, is crystal clear from the Carte Blanche case from this Court, that the period of time that matters is the period of time in which we claim Mr. Schrader abused the corporate form and treated it as his instrumentality, which is 2013 and 2014, not 2007 and 2008. In terms of the question of the asset, I think my colleague has very helpfully crystallized what the issue is here. When Mr. Schrader brought the suit, he thought he was sitting on quite a valuable claim. And the issue was he opted not to share it with the company. There was only one other principal at the time, a man . . . Is it necessary that because he thought that he had some important ownership rights or value rights in this on his own, that that is inconsistent with the company also having rights on it? That's correct, Your Honor. I believe that the way that Mr. Schrader cast everything is . . . You say it was inconsistent. Correct. If I understood the question correctly, yes. Yeah, yeah, you did. And you answered it. And at that point, you came back and said, no, the company is involved, and so the company was brought in because the company had rights there, too. Yes, and at the risk of repeating what I had said earlier, it was the manner in which he brought the company in by appending them to the caption as a plaintiff and listing them in the parties as a plaintiff, but by going out of his way at each step as to whether there's a question, is this IP owned by the company? Is it jointly owned? Went out of his way to say, I own it. I never transferred it to the company. Even the word plaintiff, which should be pluralized to become plaintiffs once another party is joined, was edited each step of the way to say Schrader. So when there's any attribution of ownership of this, it said Schrader. But he succeeded in neutralizing the standing claim because there you have the company listed, SMA, in the parties, SMA. It's a happy success when you get dismissed. Well, no, because it was refiled in state court, and unhappily for Mr. Cohen, he incurred all these fees all these years because of Mr. Schrader's choice back in 2013 to completely dodge the standing challenge. What is your theory as to who owns the intellectual property? You know, it's a good question. I believe it's quite clearly something that should be treated as a company asset as opposed to an individual asset because this is all done under the auspices of a company. But the question here, of course, for this appeal is whether there's evidence sufficient in the record for a jury to render a decision that says the manner in which Mr. Schrader behaved here is indicia that he did not see any distinction between himself and the company. And that is classic alter ego mere instrumentality. Well, if it's your theory that the company at base owned the intellectual property, then the company was properly joined. If let's say this was a bank account, and we said that the bank account is owned by a corporate entity, and therefore the corporate entity should be a plaintiff, and in a pleading, Mr. Schrader came in and said, sure, the company is a plaintiff, but the bank account is mine. Isn't it a more likely situation that if Mr. Schrader and the company had won the suit in New York, and as is asserted that they may yet, and that all sorts of assets, intellectual, would go there, that then we would be faced very soon with a suit between Mr. Schrader and the company as to who owned what proportion, what rights each had in this intellectual property. Because Mr. Schrader would say, I contributed certain special things outside of the company, and the company would say, but we owned a certain amount, and the division would then be accomplished. How is that consistent with piercing the corporate veil? Why isn't that exactly an indication that there is a company, and that there is Schrader, and that they are separate, and that we don't know who owns what, but that they are two different things? I'll point out a fact that I think would have helped Mr. Schrader in fending off that kind of claim. Mr. Schrader, with his own personal counsel, caused SMA to become a plaintiff, and in his pleading caused SMA to admit that all the intellectual property was Mr. Schrader's. So any other shareholder of the company would be, at step one, faced with those headwinds, because he'd be saying, well, the company has already admitted that it's all mine. And that's precisely the point that we're making here, is that in 2013 and 2014, Mr. Schrader had set himself up to be enriched by anything that might be said to belong to the company. And just based on basic Rule 56 case law from the U.S. Supreme Court, from the Second Circuit, it's our position that the district court's portrayal of events as they unfolded was far too innocent, far too sanitized, and it's for a jury to decide whether the appellee's version of what happens is the correct one, or whether the appellant's far less innocent version is the correct one. Thank you very much, Your Honors. Thank you both. Well argued.